IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD WELLS,<br><br>            Plaintiff,<br><br>    v.<br><br>COLONEL RICK FUENTES, et al.,<br><br>            Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 12-4436 (JBS/JS)<br><br>**OPINION** |

APPEARANCES:

Thomas Bruno, II, Esq.
Abramson & Denenberg, PC
1315 Walnut Street
12th Floor
Philadelphia, PA 19107
    Attorney for Plaintiff Richard Wells

Roshan Deven Shah, DAG
State of New Jersey
Office of the Attorney General
25 Market Street
P.O. Box 112
Trenton, NJ 08625
    Attorney for Defendant Trooper Jonathan Anthony

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

    This matter comes before the Court on Defendant Trooper Jonathan Anthony's motion for summary judgment. [Docket Item 26.] In this action under 42 U.S.C. § 1983, Plaintiff Richard Wells contends that Trooper Anthony violated his rights under the Fourth Amendment of the United States Constitution and

Article I, Paragraph 7 of the New Jersey Constitution. During the course of a traffic stop and subsequent arrest on an outstanding warrant, Plaintiff alleges that Trooper Anthony used excessive force against him in applying handcuffs too tightly. Defendant's motion principally contends that video footage from Trooper Anthony's patrol car provides incontrovertible proof that Plaintiff never complained about handcuffs being too tight and that Plaintiff never displayed any sign of distress as a result of the handcuffs.

For the reasons discussed below, the Court will grant in part and deny in part Defendant's motion for summary judgment.

**II.   BACKGROUND**

    **A.   Facts**

On July 17, 2010, Plaintiff was stopped by Trooper Anthony while driving north on Interstate 295. (Pl. Statement of Material Facts ("SMF") [Docket Item 26-1] ¶ 2.) Trooper Anthony stopped Plaintiff for speeding. (Id. ¶ 6.) Plaintiff was unable to produce a valid vehicle registration or insurance card. (Id. ¶¶ 9-10.) Trooper Anthony advised Plaintiff that without valid registration or insurance, Plaintiff's vehicle would be impounded. (Id. ¶ 11.) During the course of the stop, Trooper Anthony learned that there was an outstanding arrest warrant issued for Plaintiff by the Willingboro Municipal Court,

2

stemming from Plaintiff's arrest for disorderly conduct in 1993.[1] (Id. ¶¶ 37-38.) Trooper Mark Giacona arrived to provide backup. (Id. ¶ 43.)

Plaintiff was instructed to exit his vehicle and Trooper Giacona escorted him to the front of the vehicle. (Id. ¶ 48.) Trooper Anthony placed Plaintiff in handcuffs while in the front of the vehicle. (Id. ¶ 49.) The video timestamp on footage from Trooper Anthony's patrol car shows that Plaintiff was handcuffed no earlier than the 12:15:33 mark, when Trooper Anthony can be seen approaching the front of the vehicle, and no later than the 12:16:01 mark, when Plaintiff returns to full view. (Id. ¶ 54; see also Trooper Anthony's Motor Vehicle Recording ("MVR") Footage, Def. Ex. C.) However, because Trooper Anthony's vehicle was located behind Plaintiff's vehicle, the video does not show the actual moment when Trooper Anthony placed Plaintiff in handcuffs. Additionally, the audio of this portion of the video is muffled presumably as the result of the distance from Trooper Anthony's patrol car and vehicles passing on the highway. The Anthony MVR footage stops at 12:37:11.

In his Amended Complaint, Plaintiff asserts that he "immediately began complaining to Trooper Anthony that the handcuffs were too tight, and were cutting off his circulation

---

[1] Plaintiff pleaded guilty to the charge, but only paid $235 of the $250 fine. (Id. ¶¶ 39-40.) Plaintiff's failure to pay the remaining $15 resulted in the arrest warrant. (Id. ¶ 41.)

3

and causing severe pain." (Id. ¶ 52; see also Am. Compl. [Docket Item 11] ¶ 13.) However, during his deposition, Plaintiff testified that he complained to Trooper Anthony that the handcuffs were too tight "roughly a couple of minutes" after they were applied. (SMF ¶ 53.) Plaintiff testified that he complained to Trooper Anthony one or two times before he was placed in the patrol car for transport. (Wells Dep. on Aug. 23, 2013 [Docket Item 26-4] 34:7-14.) Plaintiff described the pain caused by the handcuffs as a "10" on a scale from 1 to 10 with 10 being the most painful. (SMF ¶ 51.) He specified pain to his wrists in the area where one would wear a watch. (Wells Dep. 33:18-34:06.) While Plaintiff and Trooper Anthony can be heard throughout the footage discussing various topics, including Plaintiff's insurance and registration, the arrest warrant, the possibility of identity theft, his address, his career, an event he planned for that evening, his personal possessions, at no point does the MVR footage capture Plaintiff complaining about the handcuffs.

 The drive from the scene of the traffic stop to the Willingboro Police Station was 14 minutes. (Trooper Anthony Patrol Log, Pl. Ex. E [Docket Item 28] at 3; see also Wells Dep. 34:21-35:9.) Trooper Anthony testified that after Plaintiff was placed in the car for transport, Anthony turned off the video recorder. (Anthony Dep. on Nov. 22, 2013 [Docket Item 26-7]

4

35:6-13.) Plaintiff testified that when he was in the car, he complained at least four times that the handcuffs were too tight. (Wells Dep. 37:12-18; 38:17-41:12.) Plaintiff also testified that Trooper Anthony told him that he would have to wait until they reached the station to loosen the handcuffs. (Wells Dep. 41:10-12.) Further, Plaintiff testified that Patrolman Burgess told him that the handcuffs were too tight and it would hurt when he removed them. (Wells Dep. 44:22-45:2.) Plaintiff's police report indicates, "No scars, marks, or tattoos." (Uniform Arrest Report, Def. Ex. H [Docket Item 26-11] at 1.)

    Plaintiff received medical care for pain to his wrists on July 26, 2010, less than ten days following the incident, by Dr. Roberto Diaz, who diagnosed Plaintiff with "compression injury of the right radial nerve." (Grossinger Note, Pl. Ex. G [Docket Item 28] at 1.) Plaintiff was examined by Dr. Grossinger on August 5, 2010, nearly two weeks following the incident, and Dr. Grossinger opined that, as a result of the handcuffs being applied too tightly on July 17, 2010, Plaintiff suffered from "traumatic tenonsynovitis of the wrists and hands, r/o radial nerve entrapment, r/o median nerve compression," with "diminished range of motion" and "loss of dexterity." (Id. at 2.)

Plaintiff provided three photographs in support of his claims, which show ligature-type markings. (Def. Ex G. [Docket Item 26-10.]) Plaintiff testified that these marks show the bruising caused by the handcuffs. (Wells Dep. 90:15-97:5.) In Plaintiff's statement to the Office of Professional Standards, he agreed that the ligature-type marks shown in the photographs could also have been caused by handcuffs that were too loose.[2] (Well's Statement to the Office of Professional Standards, Def. Ex. F, 41:10-26.)

B. **Procedural background**

Plaintiff initiated this action on July 16, 2012, asserting a claim against Trooper Anthony for excessive force in violation of the United States and New Jersey Constitutions, a claim against a fictitious patrol officer for bystander liability, and a claim against Superintendent Colonel Rick Fuentes for maintaining an unconstitutional policy, practice, or custom of excessively tight handcuffing. [Docket Item 1.] Plaintiff sued Defendants in their individual and official capacities. Subsequently, Defendants Trooper Anthony and Superintendent Colonel Rick Fuentes filed a motion to partially dismiss Plaintiff's Complaint for lack of subject matter jurisdiction,

---

[2] The Court rejects Defendant's characterization of Plaintiff's statement to the Office of Professional Standards as an admission that the handcuffs were applied loosely. In this exchange, Plaintiff merely agreed that the marks could have been caused by loose handcuffs.

6

which Plaintiff did not oppose. [Docket Item 8.] By order entered November 28, 2012, the Court granted Defendants' motion, dismissing all claims again Superintendent Colonel Rick Fuentes and all claims against Trooper Anthony in his official capacity. [Docket Item 10.] On December 7, 2012, Plaintiff filed an Amended Complaint asserting an excessive force claim against Trooper Anthony in his individual capacity under the United States and New Jersey Constitutions.[3] [Docket Item 11.]

On April 7, 2014, Defendant Anthony filed the instant motion for summary judgment [Docket Item 26], which Plaintiff opposed on April 28, 2014 [Docket Item 28.] Defendant filed a reply on May 13, 2014. [Docket Item 31.] The Court heard oral argument on Defendant Anthony's motion on July 22, 2014 and received supplemental letters from both counsel later the same day. [Docket Items 34 & 35.]

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty

---

[3] Plaintiff's Amended Complaint also asserts a claim against a fictitious patrol officer in his individual capacity for bystander liability.

7

Lobby, Inc., 477 U.S. 242, 248 (1986). Essentially, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. Scott v. Harris, 550 U.S. 372, 378 (2007).

**IV.  DISCUSSION**

Defendant argues that he is entitled for summary judgment because the undisputed evidence shows that Plaintiff never complained about the handcuffs being too tight and he never displayed any signs of distress as a result of the handcuffs. Defendant also contends that Plaintiff's claims under the New Jersey Constitution should be dismissed because such claims cannot be brought pursuant to § 1983.[4]

The Court now addresses Defendant's principal argument that he cannot be liable for violating Plaintiff's constitutional rights because Plaintiff failed to voice any complaints about the handcuffs and never showed any sign of discomfort or distress as a result of the handcuffs.

---

[4] At oral argument, Plaintiff's counsel did not object to dismissing Plaintiff's claims under the New Jersey Constitution. Accordingly, the Court will grant Defendant's motion to the extent it seeks to dismiss Plaintiff's claims for violating the New Jersey Constitution.

8

Defendant contends that the video footage from Trooper Anthony's patrol car indisputably shows that Plaintiff did not complain that the handcuffs were too tight or display visible signs of distress after he was handcuffed. Plaintiff responds by noting genuine disputes of material fact in the record and emphasizing portions of Plaintiff's encounter with Trooper Anthony not captured by the video footage provided.

The Fourth Amendment prohibits the use of excessive force by a law enforcement officer in arresting or detaining a person. Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). The test for reasonableness under the Fourth Amendment is whether under the totality of the circumstances, "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." Graham, 490 U.S. at 397. As the Court of Appeals explained in Couden v. Duffy, 446 F.3d 483, 496-97 (3d Cir. 2006):

> In deciding whether challenged conduct constitutes excessive force, a court must determine the objective reasonableness of the challenged conduct, considering the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Other factors include the duration of the officer's action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number

>of persons with whom the police officers must contend at one time [internal quotations and citations omitted].

The Court of Appeals has specifically recognized that a plaintiff who suffers serious injury as a result of "excessively tight" handcuffs when officers ignore complaints that the handcuffs are causing significant pain may establish that the officer's "use of force was excessive in violation of the Fourth Amendment." Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004).

In analyzing excessive force claims based on excessively tight handcuffs, courts in the District of New Jersey have considered "the intensity of the plaintiff's pain, the officer's awareness of the plaintiff's pain, whether the plaintiff asked to have the handcuffs removed and how long after those requests the handcuffs are removed, whether there were circumstances justifying a delay in removing the handcuffs, and the severity of the injury the plaintiff suffered." Cincerella v. Egg Harbor Twp. Police Dep't, Civ. 06-1183 (RBK), 2009 WL 792489, at *10 (D.N.J. Mar. 23, 2009).

After reviewing the evidence in the record, including video footage from Trooper Anthony's patrol car, the Court finds that there are genuine disputes of material fact which prevent summary judgment. Although Defendant contends, and Plaintiff admits, that Plaintiff cannot be heard on the video complaining about his handcuffs, the video does not cover significant

portions of Plaintiff's interaction with Trooper Anthony, including the moment when Trooper Anthony first applied the handcuffs and the 14 minute drive from the scene of the traffic stop to the station. The drive to the station is particularly relevant because Plaintiff testified that he complained to Trooper Anthony about the tightness of the handcuffs four times during this period and Trooper Anthony eventually told Plaintiff that he would have to wait to loosen the handcuffs until they arrived at the station. Moreover, Plaintiff testified that Patrolman Burgess observed that Plaintiff's wrists were swollen upon his arrival at the station and warned that removing the handcuffs would cause Plaintiff pain.

The Court acknowledges that Plaintiff and Trooper Anthony can be heard discussing a variety of topics throughout the roughly 40 minutes of video footage, including the approximately 20-minute period during which Plaintiff was handcuffed. The Court also notes that Plaintiff is visibly upset regarding his arrest throughout the video, but there is no indication that he is in physical pain, let alone an outward display of pain as the result of excessively tight handcuffs. However, Plaintiff sought medical treatment less than one week following the incident and was ultimately diagnosed with "traumatic tenonsynovitis of the wrists and hands, r/o radial nerve entrapment, r/o median nerve compression," with "diminished range of motion" and "loss of

dexterity" as a result of the handcuffs being applied too tightly on July 17, 2010.[5] (Grossinger Note, Pl. Ex. G [Docket

---

[5] The Court rejects Defendant's argument at oral argument and in supplemental briefing that Plaintiff should not be permitted to rely on Dr. Grossinger's opinion regarding causation because he failed to provide an expert report as required by Judge Schneider's standing order. Defendant notes that Magistrate Judge Schneider's standing order in all civil cases requires any doctor who will express an opinion as to causation, including treating physicians, to file an expert report pursuant to Rule 26(a)(2)(B):
> If applicable, treating physicians shall not be considered expert witnesses and shall be treated as fact witnesses who are, however, required to provide reports and records concerning their treatment. However, any doctor who is going to express an opinion as to the cause of a particular condition or as to the future prognosis of a particular condition shall be considered an expert subject to the requirements of Fed. R. Civ. P. 26(a)(2)(B).

(Mag. Judge Schneider's Standing Order in All Civil Cases [Docket Item 14] ¶ 8.) The Court will permit Plaintiff to rely on Dr. Grossinger's treatment notes and his opinion as to causation therein because it is undisputed that Plaintiff identified Dr. Grossinger as an expert in his initial disclosures and timely provided Defendant with a copy of Dr. Grossinger's treatment notes, which contain his opinion as to causation. Moreover, by letter dated January 31, 2014, within the amended deadline for expert discovery, Plaintiff again identified Dr. Grossinger as a treating physician and expert and provided Defendant with his curriculum vitae.

As such, this case is distinguishable from Patterson v. Howard, Civ. 06-4334 (RMB/AMD), 2010 WL 1050052, at *4-6 (D.N.J. Mar. 18, 2010), where Judge Bumb, relying on identical language to that in Judge Schneider's standing order in this case, barred plaintiff's treating physician from offering an opinion as to causation, permanency, and future prognosis for failing to comply with the requirements of Fed. R. Civ. P. 26(a)(2)(B). In Patterson, plaintiff only identified the treating physician as an expert in the parties' pre-trial order. Id. at *4. The treating physician's report, provided "on the eve of trial," offered no opinion as to causation, permanency, or future prognosis. Id. at *4-6. Further, Judge Bumb found that "permitting [the treating physician] to testify beyond his report on the eve of trial would cause Defendant unfair surprise

Item 28] at 2.) Plaintiff has also presented photographs of ligature-type marks on his hands and wrists which he contends were the result of excessively tight handcuffs applied by Trooper Anthony. Plaintiff's concession that the marks could also have been caused by handcuffs which were too loose does not defeat his claim but goes to the weight of evidence.

While the evidence in the present case does not rise to the level of that in <u>Kopec</u>, where the officer ignored plaintiff's repeated requests to loosen his handcuffs for ten minutes even after plaintiff fell to the ground in pain and suffered permanent nerve damage to his wrist, this is not a case like

---

and undue prejudice" and "[a]t this late date, Defendant is unable to cure this prejudice." <u>Id.</u> at *6. In the present action, Plaintiff identified Dr. Grossinger as a treating physician and expert witness at the beginning of the litigation, provided the medical record containing his opinion regarding causation of the wrist condition he was treating, and provided his curriculum vitae within the amended expert discovery deadline. The notes clearly contain Dr. Grossinger's opinion regarding the cause of Plaintiff's injuries, as well as the basis for that opinion in Plaintiff's narrative and his own observations. The timely production of Dr. Grossinger's treatment notes and opinion and curriculum vitae is in substantial compliance with Judge Schneider's Order and Rule 26(a)(2); there is no mystery about Dr. Grossinger's opinion and the bases therefore, and his opinion testimony will be confined to that offered in his report. Accordingly, the Court will permit Dr. Grossinger to appear as an expert witness in this case, but his testimony will be confined to the views expressed in his treatment notes already produced during discovery. If Defendant misunderstood Plaintiff's intention to rely on Dr. Grossinger as an expert witness or seeks to cure any alleged prejudice from Plaintiff's failure to strictly comply with Rule 26(a)(2)(B), Defendant may have an opportunity to take Dr. Grossinger's deposition.

Gilles, where a reasonable officer could not have been alerted to the pain caused by excessively tight handcuffs. Certainly, after viewing the facts most favorably to Plaintiff, the Court cannot conclude, as Defendant urges, that there is undisputed evidence that Plaintiff never complained about the handcuffs and never displayed outward signs of distress. Therefore, the Court will deny Defendant's motion for summary judgment on this ground.

**V.    CONCLUSION**

For the foregoing reasons, the Court concludes that there are genuine disputes of material fact which prevent entry of summary judgment. In particular, the Court finds that video footage from Trooper Anthony's patrol car fails to capture relevant portions of Plaintiff's encounter with Trooper Anthony during which Plaintiff testified that he complained that the handcuffs were excessively tight. However, in light of Plaintiff's consent, the Court will dismiss Plaintiff's claims under the New Jersey Constitution. The § 1983 claim for excessive force in making an arrest will remain for trial. An accompanying Order will be entered.

| | |
|---|---|
| **August 13, 2014** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |